## A. B. HOGE, Trustee, *vs.* C. L. HOLLISTER and wife.

### April Term, 1876.

HOMESTEAD—CONVEYANCE BY HUSBAND—JOINDER OF WIFE.—Under a statute which exempts from legal process a homestead in the possession of the head of a family, and the improvements thereon, to the value in all of $1,000, to enure to the benefit of the widow, and provides that the property shall not be alienated without the joint consent of husband and wife, evidenced by conveyance duly executed as required by law for married women, a deed by the husband, in whom was the legal title, neither naming the wife nor mentioning the homestead right, will not pass the homestead right, nor estop the husband and wife from claiming the same, although signed by the wife and proved as required by law for married women.

*John Ruhm*, for complainant.
*A. G. Merrit*, for defendants.

THE CHANCELLOR :—On the 23d of September, 1874, C. L. Hollister conveyed a lot in Nashville, on which there was a dwelling-house, then occupied by him and his wife as a family residence, the title being exclusively in him, to a trustee for the benefit of creditors, by deed duly acknowledged by him on that day, and registered on the 28th of the same month. Afterwards, on the 29th of December, 1874, Mary J. Hollister, the wife of C. L. Hollister, signed her name to the deed, acknowledged its execution with privy examination, according to law, and, on the 2d of January, 1875, the deed, with both certificates of probate, was again registered. The deed, on its face, is an ordinary conveyance of the land by C. L. Hollister, with covenants of general warranty, neither naming the wife nor mentioning the homestead right.

On the 17th of January, 1876, this bill was filed for the purpose, among other things, of foreclosing the trust deed by a sale of the house and lot. Thereupon Hollister and wife filed a joint answer and cross-bill, admitting the foregoing facts, and claiming homestead rights in the premises. The original complainant demurs, assigning for cause that the husband and wife, having jointly consented to the alienation of the property by deed, the probate and privy

examination to which are in due form for married women, are estopped to claim homestead rights as against the beneficiaries in the trust deed. The questions raised are whether the conveyance passed the homestead right, or estops the husband and wife, or either of them, to claim that right as against the parties entitled under the trust deed.

The state constitution of 1870, art. 11, § 11, provides as follows : "A homestead in possession of each head of a family, and the improvements thereon, to the value in all of $1,000, shall be exempt from sale under legal process during the life of such head of a family, to enure to the benefit of the widow, and shall be exempt during the minority of their children occupying the same. Nor shall said property be alienated without the joint consent of husband and wife, when that relation exists." The act of 1870, 2d session, ch. 80, § 1 (T. & S. Rev. 2114, *a*), substantially enacts these provisions into a law, with the additional requirement that the joint consent of husband and wife is " to be evidenced by conveyance duly executed as required by law for married women."

The argument in support of the demurrer to the cross-bill is based upon the assumption that the wife has no estate or interest in the property on which she and her husband reside where the title is in him ; that he, consequently, had the right to convey the property ; and that the wife's consent to his conveyance, evidenced by her signature and privy examination, meets the requirement of the statute. It is conceded that it might be otherwise if the wife had an estate or interest in the land by virtue of the homestead laws. And this concession is fully sustained by the authorities. For it has been held that in a sale or grant of realty, where the title proceeds from the wife, the husband and wife are as one grantor. They act together in her right, his concurrence being essential to the validity of the conveyance, and she is to be joined with him in the operative words and stipulations of the conveyance. *Lithgow* v.

*Kavenagh*, 9 Mass. 173. "It must appear that both hus--
band and wife were parties to the efficient and operative-
parts of the instrument of conveyance, and it is not suffi--
cient that her name was annexed as expressing her assent
to the act of her husband, and without words showing her
formal participation in the granting part of the deed."
*Per* Shaw, C. J., in *Bruce* v. *Wood*, 1 Metc. 543. To the-
same effect are *Powell* v. *Monson and Brimfield Man. Co.,*
3 Mas. 347; *Foster* v. *Dennison*, 9 Ohio, 161; *City of*
*Cincinnati* v. *Newell*, 7 Ohio St. 37. So the wife's right-
of dower in land sold by the husband does not pass where-
she is not mentioned in the body of the deed, and there are
no granting words by her, although she signs and executes-
the instrument. *Catlin* v. *Ware*, 9 Mass. 218; *Lufkin* v.
*Curtis*, 13 Mass. 223; *Cox* v. *Wills*, 7 Blackf. 410. And
a deed by the wife alone of her property, but signed and
acknowledged by the husband, was held in North Carolina
to be void both as to the husband and wife; as to him,.
because he was not a party; as to her, because of the
coverture. *Gray* v. *Mathis*, 7 Jones, 502.

The argument in support of the demurrer is rested mainly
on the language of Nicholson, C. J., in delivering the opinion
of our supreme court, in *Hicks* v. *Pepper*, published in the-
*Commercial Reporter* of March 16, 1874. The point actually
adjudged in that case was that occupancy of the land as a.
residence was essential to the continuance of the homestead.
right, and that, consequently, if the head of the family
removed with the family from the premises, and established
another residence, the land became at once subject to the-
claims of the husband's creditors, the title being in him.
The learned judge, in delivering the opinion, says *arguendo :*
"It was not intended by the act to alter or enlarge the title-
of the head of a family in the land in which the homestead
exemption is secured. Whether the title is legal or equita--
ble, it so continues in the head of a family during his life,
unless alienated as provided by the constitution. As said
by Judge Davis, in *Black* v. *Curran*, 14 Wall. 469 : ' It can--

not, in an absolute sense, be said to be an estate in the land; the law creates none, and leaves the fee as it was before, but, in substance, declares that the right of occupancy shall not be disturbed while the homestead character exists.' " Both of these eminent judges had under consideration merely the effect of the homestead right on the preëxisting title, with a view to the rights of creditors after the homestead occupancy had been abandoned. The nature of the homestead right itself, except so far as it was dependent upon occupancy, was not directly in issue. The conclusion reached was that the homestead laws do not change the title under which the land is held; that title, with all its legitimate sequences, continuing as before. The further conclusion, that the homestead right ceases with the occupancy of the land as a homestead, such occupancy being the condition of its existence, is universally conceded by all the authorities. The question remains, and is directly raised by this record, what is the nature of the homestead right? It may not change the preëxisting title, but neither do the estates of dower and curtesy. It is, at least, "a local habitation and a name." Is it, also, an "airy nothing?"

"State or estate," says Lord Coke, "signifieth such inheritance, freehold, term for years, tenancie by statute merchant, staple, elegit, or the like, as any man hath in lands or tenements," etc. Co. Lit. 345, *a.* "Right," he adds, "doth include the estate *in esse* in conveyances; and, therefore, if a tenant in fee simple make a lease for years, and release all his right in the land to the lessee and his heirs, the whole estate in fee simple passeth." "Title," he continues, "includeth a right, also, as you shall perceive in many places in Littleton, and title is the more general word; for every right is a title, but every title is not such a right for which an action lieth; and, therefore, *titulus est justa causa possidendi quod nostrum est,* and signifieth the means whereby a man cometh to land, as his title is by fine or feoffment, etc." "Interest," he concludes, "*ex vi termini,* in legal understanding, extendeth to estates, rights,

39

and titles that a man hath of, in, to, or out of lands; for he is truly said to have an interest in them. And all these words singularly spoken are *nomina collectiva*; for, by the grant of *totum statum suum* in lands, all his estates therein passe. *Et sic de cœteris.*" Co. Lit. 345, *b*.

It is plain, therefore, from our great master, that *statum*, state or estate, is the most comprehensive word to express or pass an interest in land. Blackstone is equally explicit, for he says : "An estate in lands, tenements, and hereditaments signifies such an interest as the tenant has therein. It is called, in Latin, *status*, it signifying the condition or circumstance in which the owner stands with regard to his property." "An estate of freehold," he adds, "is defined by Britton to be 'the possession of the soil by a freeman.' And St. Germyn tells us that 'the possession of the land is called, in the law of England, the frank-tenement or freehold.' Such estate, therefore, and no other, as requires actual possession of the land, is, legally speaking, freehold." 2 Com. 103, 104. Possession, then, or occupancy, is not only, as we are all taught, nine-tenths of the law, but one-tenth more of the estate, and is, to use my Lord Coke's *nomina collectiva*, "right, title, estate, and interest." Nor is it less a right, title, estate, and interest because it may be put an end to by voluntary abandonment. For Blackstone tells us that a qualified fee is such a one as hath a qualification subjoined thereto, and which must be determined whenever the qualification annexed to it is at an end. As in the case of a grant to A and his heirs, tenants of the manor of Dale ; whenever the heirs of A cease to be tenants of that manor, the grant is entirely defeated. And the condition may be annexed to a freehold for life, as in the case of a woman who holds *durante viduitate*. 2 Com. 109, 124. See, also, *Dunne* v. *Dunne*, 7 De G. M. & G. 207.

Independent, then, of the title which the husband or wife may have in the land on which they fix their homestead, the statute gives to them, and to the wife if she survive, in addition, a "right, title, estate, or interest," a something, "the

possession of the land," called, in the law of England, the frank-tenement, or freehold. Something not only given and protected by the law, but around which the ægis of the constitution is thrown. It may last for life, and is, therefore, according to all the definitions, a freehold not of inheritance. 2 Com. 121. Nay, it may continue, after the death of both parents, in the children until the youngest child comes of age, for so is the statute. I should call it, if not in an absolute sense, yet in some sense, an estate.

In this state, where occupant rights have been recognized in the public lands from the earliest times, there can be no difficulty in conceiving all the attributes of an estate as attached to, and dependent upon, residence and possession. Such rights, which were expressly held to depend upon residence and possession (*Kennedy* v. *Wiggins*, 5 Humph. 125, and *Kenner* v. *Montcastle*, 5 Humph. 128), might be sold or assigned, and subjected to debts, and would descend to heirs. *Scott* v. *Price*, 2 Head, 532 ; *Knox* v. *Thomas*, 5 Humph. 573. And, upon general principles, possession of land raises the presumption of a possessory title, and authorizes the person in possession to attack the title of the party who seeks to dispossess him. *Williams* v. *Seawell*, 1 Yerg. 82 ; *Marr* v. *Gilliam*, 1 Coldw. 488 ; *Love* v. *Simms*, 9 Wheat. 524.

That there is nothing in these views inconsistent with the rulings of our supreme court appears from the case of *Williams* v. *Williams*, decided at the April term, 1874, at Jackson, and after the decision of *Hicks* v. *Pepper*, before cited. It was there held that a conveyance of the homestead land by the husband, in whom was the legal title, was absolutely void so far as it affected the homestead right of the wife, and that the wife could come into equity to remove the same as a cloud upon her title. The opinion is also delivered by Nicholson, C. J., who uses the following language : " It is manifest from these constitutional and legislative provisions that, while possession of the homestead is the essential feature in the exemption from sale

under legal process, or by the deed of the husband, the wife is recognized as having a present, subsisting, and continuing interest in the maintenance and preservation of the benefits of their possession, *and that she has such a right in the land,* connected with the right of possession, that, when that right is violated, she is entitled to claim the protection of the courts." Such a right, if not an estate in an absolute sense, is one for all practical purposes.

Whatever we may call it, it is something which cannot be alienated without the "joint consent" of husband and wife, " evidenced by conveyance as required by law for married women." The consent must be "joint," and evidenced, not by probate and privy examination, but by " conveyance," an actual grant by the wife as well as the husband. If the conveyance of the husband alone is void as to the wife's right, her assent to that conveyance will not give it vitality. There must be a joint conveyance by both, showing on its face that they undertake to convey, and do convey, their " right, title, estate, or interest " in the land. And there can be, of course, no estoppel on either by any other form of deed. *Pratt* v. *Burr,* 5 Biss. 38. The demurrer raises only the question of estoppel by the deed. Whether there might be an estoppel by facts coupled with the deed is not raised, and need not be considered.

The demurrer is not well taken, and must be overruled.