## JOHN T. ATKINSON, Appellant, v. J. Z. TAYLOR, Respondent.

### Kansas City Court of Appeals, March 4, 1889.

1. **Appellate Practice:** INVITED ERROR. This court will not listen to complaint of alleged error of trial court, when it was invited by the complainant.

2. **Dower:** SUBJECT OF RELEASE—NOT OF GRANT. Dower, while inchoate, or, even, while consummate by the death of the husband, yet unassigned, is not the subject of grant, but of release.

3. ———: WHAT IS SUFFICIENT RELEASE OF. In the deed of a married man, his name alone (and not his wife's) appeared as grantor, as conveying the estate, etc., of himself and also in the special covenants, and the *testimonium* clause was in these words : " In witness whereof the said ——— ———, together with his wife who hereby releases her right and expectancy of the dower in the said premises, have hereto set their hand and seal, this twentieth day of December. in the year of our Lord, one thousand eight hundred and fifty-three.

" MOBILLON W. McGEE, (Seal.)
" MARY E. McGEE. (Seal.)"

The deed was duly executed and acknowledged by both husband and wife. It is *held,* that the above though irregular is a sufficient release of dower by the wife in this case, and that the technically proper form for a release of dower is to introduce the wife at the close of the deed with words which clearly show an intention on her part to release, and that the above form clearly shows such an intention, though Mrs. McGee is not even named in the attestation clause ; and, *arguendo,* that where the wife joins in the granting clause of a deed to the land of her husband, she purports to do that which she cannot do ; and attempts to pass an estate which she has not.

4. ———: STATUTE OF 1845. The statutes of 1845, relating to the conveyance of a married woman's real estate and to her release of dower, are not identical and are evidently just . as certainly intended to operate in different ways, as that they operate on different objects.

5. ———: NON-MARKETABLE TITLE, RULE AS TO, IN EQUITY. Passing by the question as to whether such matter can be considered in an action at law, it is *held,* that the above alleged defect in this deed has not made the title doubtful, or non-marketable, in the sense contemplated by the equity rule, which does not contemplate mere shadows, or possibilities, but probabilities.

6.  **Attorney's Opinion of Title:** EFFECT OF: RULE AS TO. An attorney's opinion that a title is bad will have the effect to make the courts look at the matter with closer scrutiny ; but such opinion, *ipso facto*, will not compel them to allow the title is thereby doubtful.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*C. H. Neariny* and *John W. Beebe*, for appellant.

(1)  The appellant had a right to demand a title free from reasonable doubt.  Fry on Specific Performance, secs. 573-574 ; *Mastin v. Grimes*, 88 Mo. 478 ; *Hymers v. Branch*, 6 Mo. App. 511 ; *Gaus v. Renshaw*, 2 Pa. St. 34 ; *Church v. Thompson*, N. Y. 5 Cent. Rep. 503 ; R. S. 1845, p. 431, secs. 8, 31.  (2) The deed from Mobillon W. McGee, dated December 20, 1853, did not pass the dower of his wife, Mary E. McGee.  *Whiteley v. Stewart*, 63 Mo. 361 ; *McFadden v. Rogers*, 70 Mo. 421 ; *Bank v. Rice*, 4 How. U. S. 225 ; *Heaton v. Fryberger*, 38 Iowa, 185 ; Laws 1845, p. 431, sec. 8.  (3) In any view the defect in said deed rendered the title doubtful, it affected the title to such an extent as to make it less marketable.  This would justify the appellant in refusing it.  *Gaus v. Renshaw*, 2 Pa. St. 34 ; *Mastin v. Grimes*, 88 Mo, 478 ; *Hymers v. Branch*, 6 Mo. App. 511.  (4) As the objection to the title was considered by the parties and respondent agreed to procure a quitclaim deed from Mrs. McGee within ten days it was incumbent upon him so to do, as time was of the essence of the agreement.  Chitty Contr. 433 ; *Wiswell v. McGoun*, 2 Barb. 270 ; *Bank v. Hagner*, 1 Pet. 467 ; *Conway v. Case*, 22 Ill. 127.  (5) In an action at law, such as the present, time is presumed to be of the essence of the contract.  The appellant was denied the benefit

of that presumption by the court, and in this there was error.    Chitty   Cont.   433 ;    *Wiswell v. McGoun*, 2 Barbour, 270 ; *Bank v. Hagner*, 1 Pet.  U. S. 467 ; *Conway v. Case*, 22 Ill. 127 ; *Benedict v. Lynch*, 1 Johnson, 370 ; *Hill v. School District*, 17 Mo. 316 ; Lawson's  Presumptive  Evidence,  576.    (6)  Nor was that legal  presumption  overcome  by  the  evidence ; there was no evidence of waiver or a different intention ; on the contrary all of the evidence showed that ten days was agreed upon as the limit.

*Lipscomb & Rust, Karnes & Krauthoff*, for respondent.

(1)  Having presented the case to the trial court, by his own instruction, as depending upon whether the time stated for the performance of the contract between the parties, as extended, was intended to be of its essence, the plaintiff cannot now be heard to urge a different theory, and, much less, can he be allowed to insist that the instruction referred to was erroneous.    *Walker v. Owen*, 79 Mo. 563, 568 ; *Bank v. Hammerslough*, 72 Mo. 274, 277 ; *Clifton v. Sparks*, 82 Mo. 115, 119 ; *Holmes v. Braidwood*, 82 Mo. 610, 615 ; *Musser v. Adler*, 86 Mo. 445, 449 ; *Loomis v. Railroad*, 17 Mo. App. 340 ; *Mfg. Co. v. Pratt*, 21 Mo. App. 171, 173.  (2)  The instruction, however, is not erroneous.    Time is not necessarily of the essence of a contract, even in a court of law.  *Russell v. Ins. Co.*, 55 Mo. 585, 592 ; *D'Arras v. Keyser*, 26 Pa. St. 249 ; 2 Addison on Contracts ( Abbot & Wood's Ed.) *892, 893, 894 and cas. cit ; 2 Whart. Cont., secs. 887, 888 and 894.  (3.)  The defendant's title was good without any quitclaim from the McGees.    Under the deed of December 20, 1853, the contingent dower right of Mrs. McGee was fully relinquished and released.    Such release was proper in form and sufficient in law by the recital in the *testimonium* clause.  *Fowler v. Shearer*, 7 Mass. 14, 20 ; *Stearns v. Swift*, 8 Pick. 532, 536 ; *Learned*

*v. Cutler*, 18 Pick. 911 ; *Frost v. Deering*, 21 Me. 156, 159 ; *Usher v. Richardson*, 29 Me. 415 ; *Davis v. Bartholomew*, 3 Ind. 485, 490 ; *Ins. Co. v. Noland*, 97 Ind. 217 ; *Foster v. Dennison*, 9 Ohio, 127 ; *Purcell v. Goshorn*, 17 Ohio, 105, 123 ; *Meyer v. Gosselt*, 38 Ark. 377, 380 ; *Dundas v. Hitchcock*, 12 How. 256, 257 ; 2 Scrib. Dow. (2 Ed.) pp. 289, 300 ; 1 Washb. Real Prop. (5 Ed.) pp. 257, 258 ; Vol. 2, p. 563. 1 Bish. Mar. Wom., sec. 449 ; 1 Devlin Deeds, sec. 224 ; Jones on Forms for Conv. 262, 296 ; Martindale on Conveyances, sec. 181. (4.) The right of Mrs. McGee, during her husband's life, was "a mere possibility which may be released, but cannot be the subject of a grant." It was no estate in the land. *Durrett v. Piper*, 58 Mo. 551, 554 ; *DeBar v. Priest*, 6 Mo. App. 531, 534 ; *Riddick v. Walsh*, 15 Mo. 518, 538 ; *Thornton v. Pigg*, 24 Mo. 249, 252 ; *Hoyt v. Oliver*, 59 Mo. 188, 189 ; *Green v. Putnam*, 1 Barb. 500, 506, 507 ; *Corr v. Porter*, 33 Grat. 278, 285 ; *Hinchliffe v. Shea*, 103 N. Y. 153 ; Tyler on Inf. and Cov. 558, 559 ; Warvelle on Abstracts, 20, 223 ; 4 Devlin on Deeds, 183, 184, 189 and cas. cit ; 3 Washb. Real Prop. ( 5 Ed.) 236 ; *Hamilton v. Pitcher*, 53 Mo. 334 ; *Dundas v. Hitchcock*, 12 How. 256, 267, 268 ; *Arthur v. Weston*, 22 Mo. 381 ; *Boone v. Moore*, 14 Mo. 420 ; *Dew v. Hay*, 1 N. J. L. 174 ; *Scanlan v. Wright*, 13 Pick. 523. If the equitable rule of doubtful titles has any place at all in the court of law ( and our own supreme court has ruled that it has not, *Kent v. Allen*, 24 Mo. 98 ; *Romilly v. James*, 6 Taunt. 263, 274; *Boyman v. Gutch*, 7 Bing. 279, 292 ; *Alpass v. Watkins*, 8 Term R. 515, 518), the title at bar was in no wise doubtful within the scope of that rule. *Lydall v. Weston*, 2 Atk. 19 ; *Stapylton v. Scott*, 16 Ves. 272 ; *Wrigley v. Sykes*, 21 Beav. 347, 348 ; *Vreeland v. Blauvelt*, 23 N. J. Eq. 483 ; *Thompson v. Dulles*, 5 Rich. Eq. 370, 375 ; *Dalzell v. Crawford*, 1 Pars. Sel. Eq. Cas. 37, 57 ; Waterman Spec. Perf., sec. 415 ; 3 Pars. Cont. ( 7 Ed.) *380 ;

*Mullings v. Trinder*, L. R. 10 Eq. Cas. 449, 454; Wat. Spec. Perf., sec. 413; *Alexander v. Mills*, L. R. 6 Ch. App. 124, 131, 132; *Radford v. Willis*, L. R. 17 Ch. App. 7, 11; *Falkner v. Equitable Society*, 4 Drewry, 352, 358. That an attorney has pronounced against the title does not, of itself, make that title doubtful. *Hamilton v. Buckmaster*, L. R. 3 Eq. Cas. 323, 328; *Beioley v. Carter*, L. R. 4 Ch. App. 230, 236, 240; *Bell v. Holtby*, L. R. 15 Eq. Cas. 178, 193; *Bell v. Hutchens*, 32 Beav. 615, 619. Where, as here, the objection was removable by procuring a quitclaim deed, the rule does not apply. 3 Pars. Cont. (7 Ed.) *382; *Moses v. Cochrane*, 13 N. E. Rep. (Ct. App. N. Y.) 442 and cas. cit.; *Woodware v. Van Hoy*, 45 Mo. 300.

ELLISON, J.—This is an action to recover the sum of five hundred dollars received by defendant from plaintiff on a contract for the purchase of the south forty-eight feet of lot 483, block 36, McGee's addition to the City of Kansas.

A jury being waived the cause was tried by the court and a judgment given for defendant.

It appears that on February 26, 1886, a contract was entered into by the terms of which defendant sold and agreed to convey to plaintiff "by good and sufficient title," a lot in McGee's addition to Kansas City for the purchase price of sixteen thousand dollars. A deposit of five hundred dollars was paid. It was provided that the sale should be closed, on or before March 27, 1886.

In compliance with the contract, an abstract was delivered to plaintiff on the next day, according to defendant's testimony, or sometime between the first and the middle of March according to plaintiff's version.

About March fifteenth or twentieth, plaintiff turned over the abstract to his attorney, who reported that the release of her dower interest by Mrs. McGee, in a deed dated December 20, 1853, was defective.

This was a general warranty deed in which M. W. McGee (who was Mrs. McGee's husband) was named as the grantor. Again named as conveying "all the estate, title and interest of the said M. W. McGee," etc., and also again named in the special covenants as "the said M. W. McGee for his heirs, executors," etc.

The only place where Mrs. McGee is named, is in the *testimonium* clause which omits the name of M. W. McGee and is as follows:

"In witness whereof, the said............together with his wife who hereby releases her right and expectancy of dower in the said premises have hereunto set their hand and seal this twentieth day of December, in the year of our Lord, one thousand and eight hundred and fifty-three.

"MOBILLON W. McGEE, (seal)

"MARY E. McGEE, (seal.)"

The deed was duly executed and acknowledged by both husband and wife. Defendant declined to admit that the objection made was valid, and demanded a compliance with the contract on March 27, and tendered a proper warranty deed from himself and wife.

The plaintiff refused to accept this deed and demanded a further quitclaim deed from the McGees. The evidence tended to show that without conceding the necessity of such a deed, but insisting that his title was good, and simply to humor what he conceived to be merely a whim on the plaintiff's part, the defendant verbally agreed that he would try to get the desired quitclaim. The McGees resided near Los Angeles, California, and it was thought that the deed could be returned from there within ten days. The parties thereupon added to the contract a clause extending the same to April 6, 1886. The McGee quitclaim did not arrive until April 8, 1886, on which day it was tendered to the plaintiff, who refused to accept the same, but claimed that the contract had been broken by defendant and brought this suit to recover his deposit.

At plaintiff's request, the court declared that if ten days was the limit agreed on for procuring the McGee quitclaim deed, "and time in this respect was intended to be made the essence of the contract as extended, and defendant did not procure and tender said quitclaim deed within that time, then plaintiff had a right to recover," etc. The question whether this contract for a conveyance of the property was put an end to, by defendant's failure to procure and tender the quitclaim deed within the ten days limited therefor, i. e., whether time was of the essence of the contract, was, at plaintiff's request, submitted by the instruction quoted, as a question of intention of the parties, and the trial court must have found, under the evidence, that it was not so intended. If this should be conceded to be error on the part of the court, it was invited by the plaintiff and we will not, therefore, listen to his complaint here in that respect. *Holmes v. Braidwood*, 82 Mo. 610, 615.

One of the principal questions in the case is, whether Mrs. McGee released her dower in the property, by joining with her husband, in the manner stated, in the deed to which I have referred. Mrs. McGee's name does not appear in the granting clause, and, from this, it is contended she has yet dower in the premises. Indeed, her name does not appear in any other part of the instrument than that above indicated, and the question is, has she, released her dower? The very question is, partially at least, its own answer. In speaking of dower, the invariable inquiry is, not whether the wife has granted it, but has she released it. Now a grant is one thing and a lease is quite a different thing, both in technics and law. Dower, become consummate, yet unassigned, is not the subject of a grant, but is of a release. By the much greater reason it is not the subject of a grant when not consummate by the death of the husband. It is then merely an inchoate right, a contingency. While the husband lives it is only a right in legal contemplation,

depending upon the good conduct of the wife and the death of the husband.    Until his death the right is "shadowy and fictitious" and may never become vested.

It is said in *Durrett v. Piper*, 58 Mo. 544, to be such a "possibility which may be released, but cannot be the subject of a grant or assignment."    But we are not left to depend alone upon the reason of the matter. The question has been before other courts.    In *Travelers' Ins. Co. v. Noland et al.*, 97 Ind. 217, the wife's name appeared only in the attestation clause of the deed, which was as follows :    "In witness whereof the said James French and Elizabeth French, his wife, who hereby relinquishes her dower in said premises,—have hereunto set their hands and seals, this thirteenth day of December, 1854."    This was held a sufficient release of dower.    So in *Davis v. Bartholomew*, 3 Ind. 485, the only mention or act of the wife appeared in the following, at the close of the deed :    "In witness whereof, the said Jeremiah Bartholomew and Rebecca, his wife, who hereby relinquishes her right of dower in the above premises, have hereunto set their hands, date above written."    And it was held to be a good release.

In *Meyer v. Gossett*, 38 Ark. 377, the wife's name only appeared in the *testimonium* clause as follows : " And, I, Elizabeth F. Gossett, wife of said John Gossett, for the consideration aforesaid, do hereby release and relinquish unto said Robert B. Tunstall, trustee, all my right or claim of dower in, and to, said lands."    And it was adjudged to be a good release of dower.

The same ruling was make in the case of *Frost v. Deering*, 21 Maine, 156, where the closing words of the deed, just preceding the date and signatures, were :  " In witness whereof I, the said Caleb Lassell, junior, and Susan, wife of said Caleb Lassell, in token that she

relinquishes her right to dower in the premises, have hereunto set our hands and seals, this," etc.

In *Dennison v. Foster*, 9 Ohio, 127, the court held it to be a proper release of dower, where "No mention of the wives is made in the granting part or in the covenants; but in the *testatum* clause the grantors, together with their wives ( each of whom relinquishes her right of dower), set their names and seals," etc. To the same effect are the cases of *Stearns v. Swift*, 8 Pick. 532; *Learned v. Cutler*, 18 Pick. 9, and *Dundas v. Hitchcock*, 12 How. 256. My opinion is that dower released, as in the foregoing cases, is, technically, the proper form for a release; for where the wife joins in the granting clause in a deed to land of which her husband has the fee, she purports to do that which she cannot do; and attempts to pass an estate which she has not. In *Fowler v. Shearer*, 7 Mass. 18, it is said that the usual mode of release is by introducing the wife at the close of the deed. The same is said in 1 Devlin on Deeds, section 224. Of course, at whatever part of the deed she is introduced, that part must contain words which clearly show an intention on her part to release her claim for dower. Merely joining in the execution and acknowledgment will not be sufficient. Thus in *Cox v. Wells*, 7 Blackf. 410, the wife's name only appeared in the conclusion of the deed, as follows: "In testimony whereof, the said James Conwell and Wineford Conwell, his wife, have hereunto set their hands and seals this fifth day of September, 1840." This was held not to be a release, from the fact that there is nothing contained in the clause to show affirmatively the wife's intention. That case is cited and approved in *Davis v. Bartholomew, supra*.

But the point is made that as the statute of 1845 governs the form of this conveyance; and, as is contended, that statute in relation to a conveyance of dower is identical with the statute in relation to the conveyance of a married woman's real estate, the same

requisites are necessary in a conveyance of dower as in her conveyance of an estate in fee. The statute referred to, is as follows, chapter 32, section 31 : "A married woman may relinquish her dower in any of the real estate of her husband, by any conveyance thereof, executed by herself and husband," etc. Section 35 : "A married woman may convey any of her real estate, by any conveyance thereof, executed by herself and husband," etc. These sections, besides not being identical, are evidently just as certainly intended to operate in different ways, as that they operate on different objects. One has reference to the fee-simple title, which is an estate which may be granted while the other has relation, as appears from its face, to the 'relinquishment of dower, a thing not the subject of a grant.

It is next urged that in the deed which has brought about this controversy, Mrs. McGee is not named, even in the attestation clause. The words there being : "In witness whereof, the said ............ together with his wife who hereby releases," etc. There is no shadow of doubt but that the expression "the said ..........," and "with his," refer to the grantor, M. W. McGee. That is perfectly plain, of which no one of ordinary intelligence can entertain a doubt. The reference then, in this clause, is to the wife of the grantor, who signs and acknowledges the deed. This, we think, is sufficient, and would doubtless be so held, in a matter of the release of dower, even in those jurisdictions which require that the name of the grantor shall appear in the granting clause of the deed.

The next objection to the judgment of the trial court is, that notwithstanding there may be in fact, a good title, yet it is a doubtful or non-marketable title, and therefore not such as plaintiff was bound to take. Passing by the question whether such matter can be considered in an action at law ( on which subject see *Kent v. Allen*, 24 Mo. 98, and cases cited ; and *Simmons*

*v. Hazeltine*, 5 C. B. N. S., 544, and cases cited), we have determined that the alleged defect in this deed has not made the title doubtful, or non-marketable, in the sense contemplated by the equity rule, approved by the supreme court in *Mastin v. Grimes*, 88 Mo. 478. That rule does not contemplate mere shadows or possibilities, but probabilities. Lord HARDWICKE said in *Lyndall v. Weston*, 2 Atk. 19, that mathematical certainty could not be demanded; that moral certainty was all that should be required. And his view was approved by Lord ELDON in *Stapylton v. Scott*, 16 Ves. 272, who said that the doubt must be considerable, a rational doubt.

The chancellor in *Thompson v. Dulles*, 5 Rich. Eq. (S. C.) says mathematical certainty is not attainable; that moral probability is sufficient.

It appears that plaintiff's attorney who was employed by him to examine the abstract delivered by defendant, pronounced the title bad. While in such case the courts will look to the matter with closer scrutiny, an attorney's opinion will not, *ipso facto*, compel them to allow that the title is thereby doubtful. Such opinion is not considered "as a substantive reason" why the title should be declared to be doubtful. *Dazell v. Crawford*, 1 Par. Sel. Eq. Cas. 37, 57. With the concurrence of the other judges, the judgment will be affirmed.